**FARM CREDIT SERVICES OF WESTERN MO, P.C.A.,**
Respondent,

v.

**Linda SLAUGHTER, Appellant.**

**No. WD 46692.**

Missouri Court of Appeals,
Western District.

April 20, 1993.

William J. Esely, Bethany, for appellant.

David C. Stover, Arnold R. Day, Jr., Gunn, Shank and Stover, P.C., Kansas City, for respondent.

Before LOWENSTEIN, P.J., and SPINDEN and SMART, JJ.

PER CURIAM.

Linda Blessing Slaughter appeals a judgment entered on a jury verdict of $36,035.49 for Farm Credit Services of Western MO, PCA, in an action on promissory notes. The sole issue presented in this appeal is whether the trial court erred in refusing a new trial on grounds of juror nondisclosure. We affirm.

The juror nondisclosure claim arose in the 1992 trial for nonpayment of three promissory notes. The subject of the alleged nondisclosure was a 1984 trial involving the same plaintiff and the same promissory notes.

Appellant Linda Blessing Slaughter was formerly married to Greg Blessing. Mr. Blessing died in 1990. During their marriage, Mr. Blessing arranged financing for his farming operations through Farm Credit in 1982 and 1983. To obtain the financing, Mr. Blessing and his father signed three promissory notes in their own capacities, and on behalf of their wives pursuant to their powers of attorney. Unable to collect the balance due on the notes, Farm Credit eventually sued Ms. Slaughter. That litigation culminated in the $36,035.49 jury verdict for Farm Credit in 1992.

Farm Credit had previously sued Mr. Blessing's parents. That litigation involved eleven promissory notes, including the three promissory notes that the parents had co-signed with Greg and Linda Blessing. Greg Blessing testified at the 1984 trial, which resulted in a jury verdict for Farm Credit.

The allegations of nondisclosure concerned the jury service of Sharon Hendren at the 1984 trial, and the jury service of her husband, James Hendren, at the 1992 trial. During the general questioning phase of voir dire at the 1992 trial, James Hendren responded that his contact with Ms. Slaughter's defense counsel on a real estate transaction would not affect his fairness or impartiality as a juror. When asked whether any prior experience would affect deciding the case, no member of the venire panel answered.

With voir dire complete and the venire panel excused, counsel made their challenges for cause. Defense counsel then reminded the court of Sharon Hendren's jury service at the 1984 trial. At defense counsel's suggestion, the court recalled

James Hendren for individual questioning. The following exchange took place:

THE COURT: Mr. Hendren, a matter has come up that we probably need to talk to you about just a little bit.

VENIREMAN HENDREN: Okay.

THE COURT: As to your qualifications. Not any answer that you gave or didn't give.

VENIREMAN HENDREN: Okay.

THE COURT: Now, let me see here. Your wife I think was a juror in a lawsuit in April of '84, at which time a judgment was rendered for the plaintiff and against the defendant. Do you recall your wife perhaps serving as a juror?

VENIREMAN HENDREN: The only jury I think she was on was an arson fire, is this the one?

THE COURT: Well, we will skirt around that a minute.

VENIREMAN HENDREN: Okay.

THE COURT: You don't recall discussing any type of civil case with your wife, or who the parties may have been or anything like that?

VENIREMAN HENDREN: No.

THE COURT: And if she did serve on such a case, that would not cause you to feel you had any problem?

VENIREMAN HENDREN: No.

THE COURT: Okay. Gentlemen, that is a[s] far as I'm going.

MR. ESELY [MS. SLAUGHTER'S COUNSEL]: That is fine.

THE COURT: Acceptable?

MR. ESELY: Acceptable to me.

MR. MANRING [FARM CREDIT'S COUNSEL]: Fine with me.

THE COURT: All right. Thank you. Well, then you have the list.

Counsel then made their peremptory challenges. Neither side struck James Hendren, who became a juror. The trial proceeded. The jury returned a unanimous verdict in favor of Farm Credit. In posttrial proceedings, Ms. Slaughter moved for a new trial, claiming deprivation of a fair and impartial trial from James Hendren's nondisclosure of his wife's jury service.

Sharon Hendren appeared at the hearing on the motion for new trial. After being shown copies of the verdict form and judgment, Ms. Hendren remembered her jury service at the 1984 trial against Greg Blessing's parents. She also remembered that Greg Blessing had been a witness, and that she had signed the verdict form. Ms. Hendren supposed that her husband, James Hendren, knew about her jury service on the case at the time of the 1984 trial. However, Ms. Hendren had no idea whether she had ever discussed the particulars of the case with her husband. After hearing the testimony and arguments, the trial court overruled Ms. Slaughter's motion for new trial.

Asserting error, Ms. Slaughter claims entitlement to a new trial. She maintains that she established intentional juror nondisclosure by showing that James Hendren's wife rendered jury service on the 1984 case involving the same plaintiff, the same promissory notes, her deceased husband as a witness, and her in-laws as defendants. According to Ms. Slaughter, James Hendren's nondisclosure made it impossible for the parties to intelligently raise challenges for cause and exercise peremptory challenges.

■ Litigants enjoy a constitutional right to a fair and impartial jury, composed of qualified jurors. MO. CONST. art. I, § 22(a). To this end, potential jurors have a duty to fully, fairly, and truthfully answer all questions directed to them during voir dire. *Williams v. Barnes Hosp.*, 736 S.W.2d 33, 36 (Mo. banc 1987). Requiring disclosure enables the litigants to determine jurors' qualifications and to intelligently exercise challenges. *Id.*

■ Although juror nondisclosure can require a new trial, Ms. Slaughter's assertions on appeal are unavailing. She, through counsel, failed to make a threshold showing of nondisclosure, and waived any claim of nondisclosure. "Nondisclosure" means failing to reveal or withholding material information. In the context of juror nondisclosure, the material information necessarily emanates from the juror's own experience. The ability to disclose requires

awareness of the information solicited during voir dire. *Kennedy v. Tallent*, 492 S.W.2d 33, 36 (Mo.App.1973). To obtain a new trial on the grounds of juror nondisclosure, the moving party must show more than the existence of disqualifying information; that party must show that, when questioned, the juror knew about the information solicited, and that the juror concealed or failed to reveal his knowledge. *Id.*

■ Here, the information that might have disqualified James Hendren from jury service was knowledge of the details of the 1984 trial. The disqualifying information did not emanate from the juror's experience, but from the experience of the juror's wife. Mr. Hendren's answers indicated lack of awareness of the particulars of the 1984 trial. When questioned individually, Mr. Hendren acknowledged his wife's jury service, but believed that his wife had served on an arson case. He did not remember discussing with his wife the facts of the case or the parties. He assured the court that his wife's jury service would not affect his jury service. Sharon Hendren's post-trial testimony supported Mr. Hendren's lack of awareness of any disqualifying information. Defense counsel never questioned Mr. Hendren about his knowledge of the 1984 trial. Nothing in the record establishes that Mr. Hendren knew about the 1984 trial during voir dire, or that he recalled any disqualifying information during trial.

■ Further, defense counsel waived any claim of juror nondisclosure because he knew at the time of voir dire about the Hendrens' marriage and about Ms. Hendren's jury service at the 1984 trial. Despite awareness of potentially disqualifying information, defense counsel neither attempted additional questioning nor raised timely challenges to Mr. Hendren's jury service. Defense counsel actually expressed satisfaction with Mr. Hendren's answers to the individual questions, and raised no complaint until after the return of an unfavorable verdict. A claim of juror nondisclosure is waived when counsel knows about the disqualifying information,

and takes no action before that juror is sworn. *York v. Daniels*, 241 Mo.App. 809, 259 S.W.2d 109, 126 (1953); *Lemonds v. Holmes*, 241 Mo.App. 463, 236 S.W.2d 56, 62 (1951).

Finding no error by the trial court in denying Ms. Slaughter's motion for new trial, we affirm the judgment.